United States District Court for The District Of Eastern Pennsylvania

| | | |
|---|---|---|
| Diondra Miller | : | Case No._____ |
| Plaintiff | : | |
| vs. | : | |
| Navy Federal Credit Union | : | |
| Defendant | : | |

## I.  INTRODUCTION

*This Civil Action is brought by Diondra Miller, a consumer over the age of 21, seeking actual damages, punitive damages, and cost of actions against defendant, Navy Federal Credit Union for failing to provide full disclosure and for the violations of the Fiduciary Obligations Act, for Utilizing Racketeering Activity in the connection of a consumer credit transaction and for violations made under the Consumer Protection Act.*

## II.  JURISDICTION AND VENUE

*Jurisdiction of this court arises under 18 USC 1964(a) and 18 USC 1965. Venue in this district is proper in that substantial parts of the event transpired in Delaware County of Pennsylvania and the conduct complaint of occurred in Delaware County of Pennsylvania.*

## III.  PARTIES

1. *Plaintiff identifies as Diondra Miller, a consumer and natural person that participated in a consumer credit transaction on September 9, 2021, for personal, family or household purposes identified herein as a "Promissory Note."*

2. *Upon information and belief, defendant is Navy Federal Credit Union, a corporation with its principal place of business located at 820 Follin Lane SE Vienna, VA 22180*

## IV.  FACTS OF COMPLAINT

3. *It is a fact that I am the only natural person involved in this transaction with first-hand knowledge of the details surrounding the consumer credit transaction, identified as a "Promissory Note" herein.*

4. *I, the affiant make this affidavit based upon facts from the Consumer Protection Act, Bills of Exchange Act, Uniform Commercial Code, Uniform Commercial Code of PA,  Contract law,  the powers of banks listed under 12 USC 1431, Modern Money Mechanics federal reserve bank of Chicago, the case of First National Bank of Montgomery vs. Jerome Dely,  Money and Banking by David H. Friedman (referenced by Walker F. Todd),, the affidavit of Walker F. Todd who's qualifications include but are not limited to  20 years as an attorney and legal officer for the legal departments of the Federal Reserve Banks of New York and Cleveland, nine years as an economic research officer of the Federal Reserve Bank of Cleveland, one of the Federal Reserve System's recognized experts on the legal history of central*

*banking and the pledging of notes, bonds, and other financial instruments at the discount window to enable the Federal Reserve to make advances of credit that became or could become money, extensively read treatises on the legal and financial history of money and banking, has served as an expert witness in several trials involving banking practices and monetary instruments.*

5.  *It is a fact, On September 13, 2022, I submitted a complaint via the CFPB with complaint number 220913-9391879 requesting for documentary evidence for the alleged auto loan for the 2018 Jaguar XE. This complaint clearly detailed that I was requesting for the Initial Contract, Promissory Note, Audit Trail as described by black laws dictionary 6th edition, all disclosure including opt in/ opt out disclosures bearing my signature be sent to me within 30 days upon receipt of notice. Additionally, I requested for Navy Federal Credit Union to cease and desist communication through all mediums except in writing and sent via certified mail.*

6.  *It is a fact that Navy Federal Credit Union took 38 days to respond to my complaint via the CFPB on November 7, 2022, in which they stated that a cease and desist would be placed on file and that they have verified that they are reporting accurately and would not be complying with the demands set forth.*

7.  *It is a fact that Navy Federal Credit Union ignored cease and desist and continued communication with the consumer reporting agencies.*

8.  *It is a fact that an entity cannot speak, write, or verify any information pertaining to the consumer credit transaction or the promissory note.*

9.  *It is a fact that any person speaking on behalf of the Entity named NAVY FEDERAL CREDIT UNION cannot verify or speak on facts relating to the alleged "Auto Loan" because they were not present during the consumer credit transaction and do not have first – hand knowledge of the facts.*

10. *It is a fact that on November 7, 2022, Navy Federal Credit Union provided a signed promissory note to me via the CFPB for my review.*

11. *It is a fact that the promissory note provided by Navy Federal Credit Union states that "Navy Federal pays the total CASH amount of the loan to the applicant or to the APPLICANTS account in another institution designated by the applicant".*

12. *Pursuant to 12 USC 4001 the term CASH is defined as United States coins and currency including Federal Reserve Notes. It is a fact that Navy Federal DID NOT pay any CASH to me, nor did they pay any CASH to any account in another institution designated by me.*

13. *It is a fact that promissory notes along with bills of exchange are governed by* the 1930 Geneva  Convention of Uniform Law on Bills of Exchange and Promissory Notes. Its rules also stipulate that the term "promissory note" should be inserted in the body of the instrument and should contain an unconditional promise to pay.

14. *It is a fact that a promissory note that has an unconditional promise to pay or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order becomes a negotiable instrument pursuant to UCC 3-104(a), Title 13 § 3104 of the Uniform Commercial Code of PA and § 8.3A-104 of Uniform Commercial Code of VA.*

15. *It is a fact that the promissory note provided to me from Navy Federal Credit Union does in fact have "promissory note" inserted in the body of the instrument and contains an order to pay a fixed amount to Navy Federal Credit Union.*

.

16. *It is a fact, According to UCC 3-104 a negotiable instrument with an "order to pay" that meets all requirements of subsection (a) except paragraph (1) and otherwise falls within the definition of a "check "in subsection (f) is an instrument and a check.*

17. *It is a fact that an instrument with a promise to pay is a note; however, an instrument with an order to pay becomes a draft.*

18. *It is a fact that an Instrument that becomes a draft is defined as a check payable on demand pursuant to Ucc 3-104 (e ) and Ucc3-104(f), Title 13 §3104 (e )& (f) and §8.3A-104 (e ) and (f)*

19. It is a fact that the promissory note mentioned herein contains an order to pay which turns the instrument into a draft which is defined under UCC 3-104(f) Title 13 §3104 (e )& (f) and §8.3A-104 (e ) and (f)

20.  as a check.

21. It is a fact, that in the affidavit of Walker F. Todd, he explained that banks are required to adhere to Generally Accepted Accounting Principles (GAAP). He further explained that GAAP follows an accounting convention that lies at the heart of the double- entry bookkeeping system called the MATCHING PRINCIPAL. According to this principle 'when a bank accepts Bullion, coin, currency, checks, drafts, promissory notes, or any other similar instrument from customers and deposits or records the instruments as assets, it must record offsetting liabilities that match the assets it accepted from customers.

22. It is a fact that, Walker F. Todd explains in his affidavit that there are two types of money, money of exchange and money of account. Walker F. Todd explained that money of exchange is lawful money/ legal tender and money of account are credits. He explained that based upon the bookkeeping entries required by application of GAAP and the federal reserve's own writings the assertion of a bank lending its funds, credit, or money to or on behalf of its customers creating a debt should be closely scrutinized.

23. It is a fact that, Pursuant to 12 USC 1431 the powers of banks are limited to borrowing, giving security, paying interest, issuing debentures, bonds or other obligations upon such terms and conditions as the director may approve.

24. It is a fact that, Walker F. Todd referenced Money and Banking by David H. Friedman in his affidavit to explain the modern Federal Reserve description of a bank's lending process. Money and Banking explains that A commercial banks lending process is like a thrift in that the receipt of cash from depositors increases both its assets and its deposit liabilities, which enables it to make additional loans and investments. It goes on to say that when a commercial bank makes a business loan, it accepts as an asset the borrower's debt obligation (the promise to repay) and creates a liability on its books in the form of a demand deposit in the amount of the loan. In the affidavit of Walker F. Todd he stated that consumer loans are funded similarly and that the bank's original bookkeeping entry should show an increase in the amount of the asset credited on the asset side of its books and a corresponding increase equal to the value of the asset on the liability side of the books. He explained that this would show that the bank received the customer's signed promise to repay as an asset, thus monetizing the customer's signature and creating on its books a liability in the form of a demand deposit or other demand liability of the bank. The bank would then hold this demand deposit in a transaction account on behalf of the customer It is a fact that Navy Federal Credit Union did not disclose that the signed promissory note is an asset to the bank and can be treated as a deposit of cash.

25. It is a fact that I BET YOU THOUGHT FEDERAL RESERVE BANK OF NEW YORK explains that banks create new money by depositing IOU's, promissory notes, offset by banks liabilities called checking account balances.

26. It is a fact that MONEY MODERN MECHENICS FEDERAL RESERVE BANK OF CHICAGO contains standard bookkeeping entries demonstrating that money ordinarily is recorded as a bank's asset, while a bank liability is evidence of money that the bank owes.

27. It is a fact that, one of the Federal Reserve System's recognized experts on the legal history of central banking Walker F. Todd explained  in his affidavit that the bookkeeping entries tend to prove that the banks accept cash, checks, drafts, and promissory notes/credit agreements(assets) as money deposited to create credit or checkbook money that are bank liabilities, which shows banks owe money to persons who deposit money… Cash (money of exchange) is money, and credit or promissory notes (money of account) becomes money when banks deposit promissory notes with the intent of treating them like deposits of cash.

28. It is a fact that Navy Federal Credit Union never disclosed that the promissory note mentioned herein would be treated as a demand deposit and would be held in a transaction account.

29. It is a fact that Navy Federal Never lent any of its own pre-existing money, credit, or assets for the alleged auto loan for the 2018 Jaguar XE and therefore failed to offer anything as consideration.

30. It is a fact the Promissory Note mentioned herein paid for the 2018 Jaguar XE pursuant bills of exchange act, UCC 3-104, Uniform commercial code of Pennsylvania and Virgina.

31. It is a fact that Navy Federal Credit Union misrepresented the consumer credit transaction by failing to disclose that the promissory note is a check and  furnished deceptive forms leading the consumer to believe that Navy Federal Lent money of its own stock that needed to be repaid outside of payment received from the signed promissory note.

32.  It is a fact that Navy Federal Credit Union has a fiduciary duty to come in good faith and to disclose all fact of a transaction in plain English for the consumer to fully understand. Navy Federal Credit Union has breached their Fiduciary Duty by concealing the fact that the promissory note served as a check and full payment for the 2018 Jaguar XE.

33.  It is a fact that Navy Federal Credit Union used undue influence to acquire the security interest in the 2018 Jaguar XE

34.  It is a fact that on February 21, 2023, Navy Federal Credit Union stole the 2018 Jaguar XE from affiant's home.

35.  It is a fact that Navy Federal Credit Union has unjustly enriched themselves by receiving the promissory note as an order to pay, placing a security interest in the 2018 Jaguar XE, furnishing monthly bills making the consumer believe a debt is owed, and repossessing the 2018 Jaguar XE for resale.

36.   Navy Federal Credit Union is obligated to notify the consumer of default and provide an opportunity to cure prior to repossession. It is a fact that I never received Notice of Default and Opportunity to Cure prior to the repossession of the 2018 Jaguar XE.

37.  It is a fact that, Navy Federal Credit Union has used racketeering activity by causing me harm and actual damages in an attempt to extort me out of an extension of credit

38.  It is a fact that, The Gramm Leach Bliley Act requires a Financial Institution to protect and conceal the nonpublic personal information of a consumer/ customer and to receive permission for the sharing of any nonpublic personal information to third parties.

39.  It is a fact that Navy Federal Credit Union has shared my nonpublic personal information to third parties (consumer reporting agencies, Peak Service Corp,) without my permission in an attempt to collect on an alleged debt that was paid in full by the promissory note mentioned herein.

40.  It is a fact that, an account that is paid in full cannot have payments labeled as late.

41.  It is a fact that, Navy Federal Credit Union has furnished inaccurate late payments to Transunion, Experian and Equifax, ruining my reputation and adversely affecting my access to credit.

## V.  FIRST CLAIM OF RELIEF

42.  Plaintiff re-alleges and reincorporates all previous paragraphs as if fully set out herein.

43.  Defendant has breached their fudiciary duty by concealing the fact that the promissory note is a negotiable instrument

44.  Defendants conduct was negligent and or willful.

45.  Defendant caused injury in fact by failing to disclose all information so that the consumer could make an informed decision

46.  Plaintiff is entitled to actual damages in the amount equal to the value of the 2018 Jaguar XE for the loss of property that resulted from an agreement made without full disclosure

47.  Plaintiff is entitled to reimbursement for all payments  that resulted from an agreement made without full disclosure

## VI.  SECOND CLAIM OF RELIEF

48.  Plantiff re- alleges and reincorporates all previous paragraphs as if fully set out herein

49.  Defendant has unjustly enriched themselves by receiving the promissory note as an order to pay, placing a security interest in the 2018 Jaguar XE, furnishing monthly bills making the consumer believe a debt is owed, and repossessing the 2018 Jaguar XE for resale.

50. Plaintiff is entitled to actual damages equal to value of the 2018 Jaguare XE and the sum of payments made from the plaintiff to the defendant as a result of a deceptive forms furnished to create a false belief in the plaintiff that a debt is owed.

### VII. THIRD CLAIM FOR RELIEF

51. Plaintiff re- alleges and reincorporates all previous paragraphs as if fully set out herein

52. Defendant has used racketeering activities by causing injury or threatening to cause injury to the plaintiff's livelihood and general reputation

53. Defendant has established a business relationship with consumer reporting agencies the sole purpose to aid in receiving payments on a monthly basis.

54. Defendant has informed maintained that they will ruin plaintiffs reputation by damaging her consumer report if she does not make payment "on time" Monthly.

55. Defendant has communicated to the consumer reporting agencies that the plaintiff has late or missed payments ruining the plaintiffs reputation and ability to access credit

56. Defendants conduct was negligent or willful

57. Plaintiff is entitled to threefold the damages sustained and the cost of the suit including a reasonable attorney's fee pursuant to 18 U.S.C. 1964

### VIII.    FOURTH CLAIM FOR RELIEF

58. Plaintiff re- alleges and reincorporates all previous paragraphs as if fully set out herein

59. Defendant is in violation of the Fair credit reporting act by furnishing inaccurate late payments to.

60. Defendant is in violation of the Fair Credit Reporting Act for making reports solely as to transaction and experiences between themselves and the plaintiff

61. Defendants conduct is negligent or willful

62. Plaintiff is entitled to actual damages pursuant to 15 U.S.C. 1681n and 15 U.S.C. 1681o

63. Plaintiff is entitled to punitive damages pursuant to 15 U.S.C.1681n and 15 U.S.C.1681o

### IX. FIFTH CLAIM FOR RELIEF
64. Plaintiff re- alleges and reincorporates all previous paragraphs as if fully set out herein

65. Defendant is in violation of the Fair Debt Collecting Practices Act for creating and furnishing deceptive forms creating the false belief in the plaintiff that a debt is owed.

66. Defendants conduct is negligent and willful

67. Plaintiff is entitled to actual damages pursuant to 15 U.S.C. 1692k

68. Plaintiff is entitled to costs of action pursuant to 15 U.S.C. 1692k

### X. SIXTH CLAIM FOR RELIEF
69. Plaintiff re- alleges and reincorporates all previous paragraphs as if fully set out herein

70. Defendant is in violation of the Gramm Leach Bliley Act by sharing nonpublic personal information with nonaffiliated third parties without the permission of the Plaintiff

71. The Defendants conduct is negligent or willful

72. *Plaintiff is entitled to $100,000 for each violation*

73. *Plaintiff is entitled to 10,000 per violation for officers and directors in charge of Defendant*

## XI.   PRAYER FOR RELIEF

*Wherefore Plaintiff respectfully seeks judgment in Plaintiff's favor against Defendant for the violations stated herein.*

a. *Actual damages in the amount of $278,388.36 for violations under the Racketeer Influenced and Corrupt Organization Act, The Fair Credit Reporting Act.  Damages sustained as a result of Unjust Enrichment and Damages sustained as a result of Non- disclosure.*

b. *Punitive damages in the amount of $25,000 for willful and negligent noncompliance pursuant to 15 U.S.C. 1681n(a)(2)*

c. *Fees for each violation made under the FDCPA pursuant to 15 U.S.C. 1692k(a)(1) in the amount of $51,282.24*

d. *Fee of $100,000 per violations made under the Gramm Leach Bliley Act*

e. *Fee of $10,000 per violation for each CEO and Officer of Navy Federal Credit Union*

*Respectfully,*

*Diondra Miller (Pro Se)*
*327 Sanford Rd*
*Upper Darby, PA 19082*
*Diondra.Miller@aol.com*