IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DIONDRA MILLER,** | : | |
| Plaintiff, | : | **CIVIL ACTION** |
| | : | |
| v. | : | **NO. 23-CV-1910** |
| | : | |
| **NAVY FEDERAL CREDIT UNION,** | : | |
| Defendant. | : | |

**MEMORANDUM**

**KENNEY, J.**                                                                                              **JULY 18, 2023**

Plaintiff Diondra Miller brings this *pro se* civil action against the Navy Federal Credit Union ("Navy Federal"). Miller also seeks leave to proceed *in forma pauperis*. For the following reasons, the Court will grant Miller leave to proceed *in forma pauperis* and dismiss her Complaint without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Miller will be granted leave to file an amended complaint as set forth more fully below.

**I.      FACTUAL ALLEGATIONS**[1]

In a Complaint consisting mainly of legal jargon, Miller alleges that Navy Federal violated her rights under various financial statutes as the result of the repossession of a 2018 Jaguar XE. Compl. ¶¶ 1, 4-6. Miller claims to have "participated in a consumer credit transaction on September 9, 2021, for personal, family or household purposes identified herein as a 'Promissory Note.'" Compl. ¶ 1. She asserts that on September 13, 2022, she submitted a complaint to the Consumer Finance Protection Board "requesting . . . documentary evidence for the alleged auto loan for the 2018 Jaguar XE." *Id.* ¶ 5. She also "requested for Navy Federal Credit Union to cease

---

[1] The facts set forth in this Memorandum are taken from Miller's Complaint. (ECF No. 2.) The Court adopts the pagination supplied by the CM/ECF docketing system.

and desist [*sic*] communication through all mediums except in writing and sent via certified mail." *Id*. She claims that Navy Federal responded to her complaint on November 7, 2022 by stating that a "cease and desist would be placed on file and that they have verified that they are reporting accurately and would not be complying with [Miller's] demands." *Id*. ¶ 6.

Miller further alleges that on November 7, 2022, Navy Federal provided a signed promissory note stating that "Navy Federal pays the total CASH amount of the loan to the applicant or to the APPLICANTS account in another institution designated by the applicant." *Id*. ¶ 11. She claims that Navy Federal "never disclosed that the promissory note . . . would be treated as a demand deposit and would be held in a transaction account," and "never lent any of its own pre-existing money, credit, or assets for the alleged auto loan for the 2018 Jaguar XE and therefore failed to offer anything as consideration." *Id*. ¶¶ 28-29. She asserts that Navy Federal "unjustly enriched themselves by receiving the promissory note as an order to pay, placing a security interest in the 2018 Jaguar XE, furnishing monthly bills making the consumer believe a debt is owed, and repossessing the 2018 Jaguar XE for resale." *Id*. ¶ 35. Miller further claims that Navy Federal "furnished inaccurate late payments to Transunion, Experian and Equifax, ruining [her] reputation and adversely affecting [her] access to credit." *Id*. ¶ 41. She seeks monetary damages. *Id*. ¶¶ 1, 4-6.

## II.   STANDARD OF REVIEW

The Court grants Miller leave to proceed *in forma pauperis*. Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the

complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). "'At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the pro se] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)); *see Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (noting that a *pro se* litigant's allegations are to be construed liberally). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

## III.   DISCUSSION

Liberally construing the Complaint, the Court understands Miller to allege that the repossession of a 2018 Jaguar XE from her home and inaccurate reporting of late payments on the vehicle along with use of deceptive loan forms violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x; the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p; and the Gramm Leach Bliley Act, 15 U.S.C. § 6801, *et seq.* Compl. ¶¶ 3-4.[2] Miller also appears to assert a claim under the Racketeer Influenced and Corrupt Organizations ("RICO") Act, citing to 18 U.S.C. § 1964. *Id*.

---

[2] The Complaint references various other statutes and legal terms, including the "Fiduciary Obligations Act," the "Consumer Protection Act," the "1930 Geneva Convention of Uniform Law on Bills of Exchange and Promissory Notes," and a variety of "UCC" violations, (*see* Compl. ¶¶ 1-2); however, such passing references are not sufficient to raise any such claims. *See Campbell v. LVNV Finding, LLC and Resurgent Capital Servs.*, No. 21-5388, 2022 WL 6172286, at *7 (E.D. Pa. Oct. 7, 2022) (A "'passing reference' to jurisprudential precepts without more does not bring that issue before the Court in that it provides no basis for a ruling one way or the other.") (citing *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994)); *Alexis v. Sessions*, No. 18-2099, 2018 WL 5077899, at *2 n.1 (D.N.J. Oct. 18, 2018). To the extent Miller intends to pursue other claims, she should identify such claims in any amended complaint and clearly describe the factual basis for each claim.

### A.   FCRA Claim

The FCRA was enacted "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007); *see also SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 357 (3d Cir. 2011) (noting that the FCRA is intended "to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant and current information in a confidential and responsible manner" (quoting *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010))). In the language of the FCRA, credit reporting agencies "collect consumer credit data from 'furnishers,' such as banks and other lenders, and organize that material into individualized credit reports, which are used by commercial entities to assess a particular consumer's creditworthiness." *Seamans v. Temple Univ.*, 744 F.3d 853, 860 (3d Cir. 2014).

"The FCRA confers on a consumer a right to have the negative information on his or her credit report investigated for accuracy." *Klotz v. Trans Union, LLC*, 246 F.R.D. 208, 211 (E.D. Pa. 2007). In that regard, if a consumer disputes the completeness or accuracy of information contained in her file, the consumer reporting agency must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate." 15 U.S.C. § 1681i(a)(1)(A). "Generally speaking, a consumer reporting agency does not violate the FCRA's requirement that it 'follow reasonable procedures to assure maximum possible accuracy' of credit reports or to 'reinvestigate' consumer

disputes of information if the information that it reports is factually accurate." *Williams v. Experian Info. Sols., Inc.*, No. 14-8115, 2016 WL 3466089, at *3 (D.N.J. June 21, 2016).

Miller appears to allege an FCRA claim against Navy Federal because it was a furnisher of credit information.[3] To state a plausible claim under the FCRA against a furnisher of credit information, as opposed to the consumer reporting agency itself, Miller must allege that she "filed a notice of dispute with a consumer reporting agency; the consumer reporting agency notified the furnisher of information of the dispute; and the furnisher of information failed to investigate and modify the inaccurate information." *Harris v. Pennsylvania Higher Educ. Assistance Agency/Am. Educ. Servs.*, No. 16-693, 2016 WL 3473347, at *6 (E.D. Pa. June 24, 2016), *aff'd sub nom. Harris v. Pennsylvania Higher Educ. Assistance Agency/Am. Educ. Servs.*, 696 F. App'x 87 (3d Cir. 2017); *see also* 15 U.S.C. § 1681s-2(b). If the furnisher fails to comply with its obligations under the Act, "the aggrieved consumer can sue for noncompliance." *Hoffmann v. Wells Fargo Bank, N.A.*, 242 F. Supp. 3d 372, 391 (E.D. Pa. 2017). The FCRA has several provisions that create liability for violations of the Act. *SimmsParris*, 652 F.3d at 358. However, "under the FCRA, 15 U.S.C. § 1681s-2(b) is the only section that can be enforced by a private citizen seeking to recover damages caused by a furnisher of information." *Eades v. Wetzel*, 841 F. App'x 489, 490 (3d Cir. 2021) (*per curiam*) (internal quotations omitted).

Miller has failed to allege a plausible claim against Navy Federal as a furnisher of information. Miller states, without further detail, that Navy Federal "furnished inaccurate late payments to Transunion, Experian and Equifax, ruining [her] reputation and adversely affecting [her] access to credit." Compl. ¶ 41. Miller has not identified the accounts or described the false

---

[3] Miller has not stated a plausible claim against Navy Federal under the provisions of the FCRA pertaining to consumer reporting agencies because she has not alleged that Navy Federal is a consumer reporting agency.

5

or misleading reports at issue. She also has failed to allege that she filed a dispute with any credit reporting agencies, that any agency relayed a dispute to Navy Federal, or that Navy Federal failed to investigate and modify inaccurate information. *See Pressley v. Capital One*, 415 F. Supp. 3d 509, 513 (E.D. Pa. 2019) (plaintiff failed to state a FCRA claim when she "ha[d] not (1) identified the accounts at issue, (2) described the allegedly false and misleading information that appears in the accounts, (3) stated that she filed a dispute regarding the false and misleading information; or (4) alleged that Capital One failed to investigate and modify the inaccurate information"); *see also SimmsParris*, 652 F.3d at 358 (explaining that the notice "must be given by a credit reporting agency, and cannot come directly from the consumer"); *Harris*, 696 F. App'x at 91 ("A consumer may certainly notify a furnisher/creditor directly about his dispute but there is no private cause of action under § 1681s-2(b) for a furnisher's failure to properly investigate such a dispute."). Miller's FCRA claim fails as a result. The Court will give her an opportunity to cure these deficiencies in an amended pleading.

### B. FDCPA Claim

"The FDCPA protects against abusive debt collection practices by imposing restrictions and obligations on third-party debt collectors." *Riccio v. Sentry Credit, Inc.*, 954 F.3d 582, 585 (3d Cir. 2020) (*en banc*). To state a claim under the FDCPA, a plaintiff must establish that "(1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Jensen v. Pressler & Pressler*, 791 F.3d 413, 417 (3d Cir. 2015) (quoting *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014)); *see also Pressley*, 415 F. Supp. 3d at 512-13 ("To state a claim under the FDCPA, a plaintiff must establish that: (1) he or she is a consumer who was harmed by violations of the

FDCPA; (2) that the 'debt' arose out of a transaction entered into primarily for personal, family, or household purposes; (3) that the defendant collecting the debt is a 'debt collector,' and (4) that the defendant violated, by act or omission, a provision of the FDCPA.") (internal quotation omitted). Where a plaintiff fails to allege facts supporting each of these elements, the FDCPA claim is not plausible. *See Humphreys v. McCabe Weisberg & Conway, P.C.*, 686 F. App'x 95, 97 (3d Cir. 2017) (*per curiam*) (concluding that FDCPA claim was pled based on "conclusory and speculative statements that cannot survive a motion to dismiss").

The FDCPA defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). This statutory language focuses "on third party collection agents working for a debt owner—not on a debt owner seeking to collect debts for itself." *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1721 (2017). In contrast, a "creditor" is defined as "any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." 15 U.S.C. § 1692a(4).

Miller does not specifically allege, nor does anything in the Complaint suggest, that Navy Federal is a debt collector. Absent facts from which it could be plausibly inferred that Navy Federal acted as a debt collector as defined in the statute, Miller cannot state a claim under the FDCPA. Miller also fails to describe other than in conclusory terms how Navy Federal's acts or omissions violated a provision of the FDCPA. Instead, Miller broadly alleges that Navy Federal violated the FDCPA by "creating and furnishing deceptive forms creating the false belief in [Miller] that a debt

7

is owed." Compl. ¶ 65. Miller's Complaint as pled does not present a plausible FDCPA claim. The Court will give Miller an opportunity to file an amended complaint that addresses these deficiencies.

### C. Gramm Leach Bliley Act Claim

Miller appears to assert a claim under the Gramm-Leach-Bliley Act ("GLBA"), 15 U.S.C. § 6801, *et seq*. (Count IV). However, the GLBA does not provide a private right of action. *See, e.g.*, *Ishmael v. GM Fin. Inc.*, No. 22-CV-1095, 2022 WL 2073821, at *2 (E.D. Pa. June 9, 2022); *USAA Fed. Sav. Bank v. PLS Fin. Servs., Inc.*, 340 F. Supp. 3d 721, 726 (N.D. Ill. 2018) ("[I]t is well-recognized that the [GLBA] does not provide a private right of action to enforce its rules." (citing cases); *Grooms v. Discover Fin. Serv.*, No. 21-4265, 2021 WL 6072809, at *2 (E.D. Pa. Dec. 22, 2021). Accordingly, the Court will dismiss the GLBA claim with prejudice.

### D. Civil RICO

The Complaint makes passing reference to Navy Federal's unspecified "racketeering activities." Compl. ¶¶ 1, 37, 52. The Racketeer Influenced and Corrupt Organizations ("RICO") Act "makes it unlawful 'for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.'" *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 362 (3d Cir. 2010) (quoting 18 U.S.C. § 1962(c)). To state a civil RICO claim, a plaintiff must plausibly allege the following elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Id.* (internal quotations omitted). Additionally, a plaintiff must have sustained "injury to business or property" caused by the alleged RICO violation in order to bring a RICO claim. *Maio v. Aetna, Inc.*, 221 F.3d 472, 482-83 (3d Cir. 2000). To the extent Miller is raising civil RICO claims, her attempt to

do so by invoking the words "racketeering activity" and citing to 18 U.S.C. § 1964 constitutes nothing more than conclusory allegations wholly unsupported by factual allegations that identify the conduct, enterprise, pattern, racketeering activity, and injury elements. Accordingly, Miller has failed to state a plausible RICO claim. *Iqbal*, 556 U.S. at 678. The Court will give Miller an opportunity to file an amended complaint that addresses these deficiencies.

### IV.  CONCLUSION

For the foregoing reasons, the Court will grant Miller leave to proceed *in forma pauperis* and dismiss her Complaint without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim. Miller's GLBA claim will be dismissed with prejudice. Miller's remaining claims based on the FCRA, FDCPA, and civil RICO will be dismissed without prejudice. Miller will be given leave to file an amended complaint to cure the deficiencies in those claims.

An appropriate Order follows, which provides further instruction as to amendment.

**BY THE COURT:**

**/s/ Chad F. Kenney**

**CHAD F. KENNEY, J.**